14-3108 Pen LLC et al. v. Prosper Business Development Corp et al. Oral Argument Not to Exceed 15 Minutes per Side Mr. Arnold for the Appellant Well, it feels a little bit like walking into a hornet's nest here. My issues are much more in this appeal, Your Honors. I am appealing, and my firm is appealing, the trial court's decision not to award sanctions for the frivolous filing of a complaint that included claims of mail fraud, wire fraud, conversion, breach of fiduciary duty against me and my law firm, when all I did and all I have ever done for Prosper Business Development is serve as its counsel. But before we get to the underlying merits of the Rule 11 motion, why under the Ritter case should the district court not be affirmed for the failure to file a motion for sanctions before the actual dismissal of the claims? Your Honor, the Ritter case poses the proposition that nothing was given to the offending party before the Rule 11 motion was filed. There was no letter and no motion. In contrast, here in June of 2011, I'm sorry, on December 6th of 2010, I wrote a letter to opposing counsel demanding that they dismiss all of the claims against my law firm and me because they were outrageous and completely unfounded. But why should the sending of a letter comply with the Rule's requirement that there be a filing of a motion giving the 21 days safe harbor? Well, because the purpose of the Rule is to give the offending party 21 days to correct their behavior. And it elevates form over substance to suggest that a letter doesn't serve the same purpose when the letter in this case used the same language and supplied the same information that a motion would have. In other words, the argument... Which is that it brings to the attention of the offending party lawyer that there is a fundamental problem under Rule 11. Wasn't that the whole theory in the advisory committee notes and so forth? It is, Your Honor, that the purpose, I think as this court has pronounced in Ritter, that the purpose is to give notice to the offending party and give them an opportunity to correct the improper behavior. To suggest that that same notice and the same opportunity isn't provided by letter is to elevate form over substance. It's to suggest that if I had written the word motion on my letter that that would properly comply with Rule 11, whereas otherwise it doesn't. I think it's also important, Your Honor, to note that the purpose is served to give them the opportunity to withdraw the offense of pleading. And in this case, within approximately a week, I did hear back from Mr. Cooney, the managing partner, on behalf of himself and Messrs. Mokhtari and Bauer, refusing to withdraw the complaint, claiming that it was well-grounded in law or fact. So to the extent that a motion would be required, it would certainly be an exercise in futility now when they have told us before the 21 days have expired that they're not going to do it. In your research, Mr. Arnold, with respect to other circuits taking the position on this matter, did you see a consistent benefit to your side with respect to those cases that have upheld this strict compliance and using the label? It's more than using the label. I think it has to be filed with the court, does it not? Well, by rule, it's not to be filed with the court. Oh, it's to be on the party? Yes. And my letter was served on all of them that would have otherwise been given a motion. By my count, assuming that it's correct and accurate as of today, I think there are five circuits that require strict conformity to the motion practice, and three, including this circuit, that doesn't necessarily require it be in the form of a motion. I would ask the court to review the Barker case, although I concede that it's unpublished, unlike Ritter. But it is identical to this case, where two letters were sent to the opposing party to withdraw the offensive pleading. They refused, judgment was entered, then the motion was served, and the court granted sanctions, and this court approved of that. It would be an exercise in futility, after sending a letter and after having that letter proposal rejected, to suggest that we now need to send the motion. I'm sorry. No, I didn't say anything. The standard here to be applied by the court in connection with ruling on a sanctions motion, however, was improper. I think on page five of Judge Frost's decision, he essentially said that the standard in that district, in the Southern District of Ohio, was to only punish people in the event they persisted in pursuing a meritless claim. Well, that's the wrong standard. It effectively gives a free pass to anybody who files a frivolous complaint until they finally withdraw it. I had to spend tens of thousands of dollars to respond to a complaint that alleged I engaged in RICO violations of mail fraud and wire fraud. I converted funds. I engaged in breaches of fiduciary duty to an entity to which I didn't owe a duty. After they refused to withdraw the offensive pleading, we then did file a motion to dismiss, and I think that the trial court's statements in connection with ruling on that are illuminating. On May 27, the court granted that motion to dismiss, and it said, among many other things, as it pertains to the RICO claims, for example, the plaintiff's complaint is replete with conclusory allegations. They have failed to provide any facts identifying the persons involved or the time, place, or content of the allegedly fraudulently mail or wire communications. And he went on and on. Now, we heard in response to the motion for sanctions that the underlying counsel, and I do want to point out it was not present counsel for Penn. It was prior counsel. That they reviewed numerous documents, and they talked with their clients, and they came to the conclusion, based upon those conversations and the review of documents, that we had engaged in this misconduct. But what they don't tell us. Why did your firm or you, Mr. Arnold, eventually serve a Rule 11 strict compliance? Motion? Yeah. By the time I was, I sent the letter. I think after judgment. I sent the letter, and then Mr. Satanovich, the Bailey Cavalier firm, was representing us by that time. And then he sent a motion, and he waited 21 days, and then filed it with the court. Your counsel took that and decided there ought to be that kind of compliance? Yes. Well, I mean, you know, if we want to call it strict compliance, yeah. Yeah. He did. It suggests a little, it suggests that there's an appreciation of the difference and the need to file earlier. At least when counsel gets involved and says, we probably should have dotted these I's. Your Honor, I look at it more as belts and suspenders. I mean, we did it both ways, and neither way provoked a response that should have been provoked. It didn't matter, because after he filed. It was after the judgment, wasn't it? Yes. Your counsel did it? Yes, and I think the letter by Mr. Satanovich was more along the lines of, my client has now spent approximately $40,000, and you need to pay us for that, or we'll file a motion. And that, of course, provoked. Another abusive process case. Should have. But having not gotten any response favorable, at least, we then went to motions practice, and Judge Frost ruled that the, although it was a close call, it was the practice in that district court to only sanction persistent conduct rather than the initial conduct. Now, the missing element between what Penn consistently, well, Plunkett Cooney and its lawyers say, is they claim to have had a reasonably objective basis, which is the standard in the Sixth Circuit, to file the complaint. They tell us about many documents and conversations that they've had that caused them to form that belief, but they don't tell us how they got there. They can look at documents in the entire Library of Congress, but unless we see something in those documents that suggests that I did anything other than provide traditional legal services, there is no claim for mail fraud, wire fraud, conversion, or breach of fiduciary duty. Your complaint has to be grounded on the fact that those labels were used, because as I understand the record, there was no effort to pursue any of that other than the filing of the complaint. In other words, they didn't pursue that you were a RICO. They label you as such in their complaint, but there was no continuation of that, as I get it. It was simply the filing. That's correct, Your Honor, because we filed a motion to dismiss, and it was granted. It was granted, that's why. But did they oppose the motion to dismiss? Of course. So there was litigation at the motion to dismiss stage on whether there was a claim for RICO that met, I assume, met the standards of Iqbal and Twombly or some such issue. Exactly. So there's where you would have had the information about what grounding they had. Well, the information that they provided, Your Honor, was characterized by the district court, and the reason it was dismissed was, I'll quote it, with regard to the law firm defendant's plaintiff's complaint is particularly deficient. Neither the complaint nor the memorandum in opposition contain any facts suggesting that the law firm defendant's involvement in the alleged enterprise constituted anything more than the provision of legal services. I got sued for being a lawyer for Prosper Business Development Corp., spent about $40,000 as of the date Mr. Satanovich wrote his letter, and then against that backdrop, having no reasonable basis to have made those claims. The judge denied our motion for sanctions because it wasn't a persistent conduct or misconduct. It was only the filing of the complaint. Okay. Supposing that you hadn't sent the letter before the dismissal of the RICO claim. So we're dealing with a hypothetical now. If you simply filed a motion to dismiss the RICO claim and you won, should you then be able to file a motion for Rule 11 sanctions for the filing of a RICO claim against you? Your Honor, under those circumstances, I think that the offending party has been deprived of the 21-day safe harbor by which they could withdraw the offense of pleading, and so the answer would be no. Let's say you had a telephone conference, and in the telephone conference you threatened the sanctions motion. Well, I think under those circumstances, Your Honor, it gets closer, but I think the writing, so that we can all look back at it later and see that it conforms otherwise with the provisions of Rule 11, is sufficient. We would then get into the sufficiency of an oral conversation of whether it complied with the mandates of Rule 11C, and I'm sure there would be litigation over that. I think the hallmark is notice and the opportunity to withdraw the offense of pleading, and here they were given notice. They were given the opportunity to withdraw the offense of pleading, and every time, every opportunity, they refused, and that's why the judge's ruling that they should not be sanctioned because they didn't engage in a persistent course of conduct is an abuse of discretion. It didn't apply the correct standard at all. If the district judge didn't apply the correct standard, and if we agreed with your no need to file the actual motion argument, what would be the proper remedy for this Court? Would it be to remand so that the district judge could apply the correct standard? I think that the proper remedy would be to remand to permit us to conduct discovery because he ruled before permitting me to inquire what the reasonable basis was upon which the complaint was filed, and then consider using the reasonably objective standard whether he will award sanctions or not simply because, obviously, if we file the motion, it doesn't mean we're entitled to it, but he does need to apply the correct standard. Thank you, and your red light is on. Good morning, Your Honor. Josephine DeLorenzo for Appalese. I was going to address the procedural issue first, and as you discussed, there is some disagreement among the circuits, and I would say it's unsettled in this circuit. There are a couple cases that imply that substantial compliance with a warning letter is okay, but, again, the Ritter case instructs that there be strict adherence to the rules procedure, and, granted, that case didn't address a warning letter. It just had to do with the motion has to be served 21 days before a final judgment or a decision on the issue. My understanding is your opponent was referring to a case that was called Barker, and is this the I have found a Barker case from 1998 that is a Rule 34 order. Is that what? Yes, I saw Barker v. Bank One and then Haddon v. Letskus, and both of those sort of imply that a warning letter is okay. But I cited a case... And Haddon is also an unpublished order. Correct. In a Rule 34 case. Yep, 1997. I just cited the Salkeel case, which is published just for the proposition that it seems that the issue is unsettled here because it was in a footnote, and this court just said that this opinion does not endorse the use of a letter in place of the requisite safe harbor motion, but that issue wasn't raised in the case. Okay, so your opponent makes the argument that this is a matter of form over substance, and if he had only put motion on the letter, then he would be home free. How do you respond to that? Well, if you're going to adopt substantial compliance, then I would say that probably does substantially comply. With your best argument for strict compliance, what's better about that? Two things. One is I cited a district court case, which I think provides some good reasoning, and that's Miller v. Credit Collection Services, which is a Southern District of Ohio case. And basically they said if the drafters of the rule wanted you to be able to use a warning letter, they could have put that in the rule, but the rule... That's their argument? Yeah. There's a rule and... We have rules. Correct, and it's not serving a motion isn't the function. Okay, I wondered if there were any policy reasons behind it. Well, I would just say a practical reason I think maybe Judge Stee was getting at. There tends to be a lot of blustering back and forth between attorneys, and we've all got our iPhones attached to us, and can we start firing off text messages or e-mails, threatening Rule 11 sanctions? We have to draw a line somewhere. As far as the substantive issues, I realize that all of our claims were dismissed on the pleadings, but just because a claim is shown to be groundless, it doesn't mean that sanctions are required or even appropriate. It's basically discretion. I don't want to throw myself or my law firm under the bus, but I did cite a Fifth Circuit case, Bergquist, and the Fifth Circuit affirmed the district court's denial of sanctions because the district court found they weren't warranted, there was no improper purpose. Rather, the complaint was the product of ineptitude and misguided legal research rather than a failure to attempt a reasonable inquiry into the law. So not that I think that's what happened here, but even if the district court thought that or if you were to think that, it still doesn't mean that sanctions are required. Is there a problem here for your firm in that the whole basis for going to federal court is the RICO claim, and you're not giving it an enthusiastic support for the RICO claim here? You're saying, well, maybe this was properly dismissed. So the whole federal action shouldn't be in federal court if there is no RICO claim. Correct. I do have a defense of our RICO claim. I mean, I realize that they didn't plead with particularity, and that's a big issue, but what the court decided it on is he said the one specific thing that we did plead was that MarketStar arbitration where the Arnold firm represented Prosper and obtained the $4.75 million award on their behalf instead of on Big Research's behalf, which would have entitled Penn to their share, which is what they later had to litigate. So Arnold argued and the trial court agreed that that was just saying that was traditional legal services. There's nothing more. But I did find some support in the case law where you can have traditional legal services, but if you know that it's furtherance of a fraudulent act. And the case I cited did, granted, come after this. It was a published case from this circuit, Owinga v. Benistar in 2012, and they said that you can show that the attorney participated in the enterprise by either making decisions on behalf of the enterprise or by knowingly carrying them out. So even if we didn't do a good job of pleading it, that was our theory, that the law firm was knee-deep in all these things that we were saying were improper. And so even if they're just doing traditional legal services, it can still stay a RICO claim. And you could have, tell me if I'm wrong, you could have appealed the dismissal of the RICO claim in this appeal that was just argued a half an hour ago, right? Correct. But you did not. But we didn't. And I guess that would go back to what we were saying before. The reasoning that the district court used in this case to deny the sanctions is if you persist in a claim that's been shown to be groundless, that's more of a reason for sanctions than if you just assert something that's been dismissed. I did provide some opposite examples of that in my brief. There was the Help v. Nicholson case, and this circuit affirmed the district court's awarding of sanctions because a litigant newer should have known that his case had lacked merit because the identical claim had been dismissed. And then the Baker v. Chauvin case that I think was cited for something else, the court found sanctions appropriate because counsel continually perpetuated an irrational view of the law and admitted that they had no causation proofs because that was a poor case. Why did the district judge exercise supplemental jurisdiction over what was essentially state law claims and counterclaims here after the district judge dismissed the RICO claim? Oh, I'm not sure, Your Honor. I would defer to if Mr. Arnold knows the answer to that question. I was a trial counsel, so I'm not sure. It seems like there was an awful lot of litigation in the federal court on totally state law matters here. Was there diversity of citizenship? That wasn't alleged. Well, Penn is an Illinois company, and I believe somebody else was in Ohio, so maybe that was it. I think that was all I had unless you had any additional questions. Suppose that we agree with your opponent that this letter was enough to constitute compliance with the mechanics of Rule 11. Did the district judge apply the wrong standard, and should we remand so that he can apply the right standard? Well, I guess I would agree that he didn't use the language objectively reasonable. He did say that it was a close call, but it was his discretion to say he didn't think it rose to the level where sanctions were warranted. He didn't see the repeated assertion of a frivolous claim, so I would say no, sanctions aren't warranted. Thank you. Thank you, Your Honors. There was nothing close about it. I had never, and my firm had never engaged in any mail, wire, or common law fraud, never had the opportunity to prove that those allegations were utterly baseless because the sanctions ruling came out before any discovery was completed. Well, you proved it by getting all the claims dismissed. Yes, and I thought I heard my opponent say that they didn't persist in an appeal because to do that would have warranted sanctions, which is the circular way of saying it was baseless in the first place. Well, or could have opened them up to an argument that sanctions would be appropriate under the test that the district judge was applying. And respectfully, sanctions were already warranted under the circumstances where there was no basis for filing the complaint against me or my firm. Something that I heard your opponent talk about is being knee deep in the diversion of assets. So she mentions this case where there was, so I'm interested in that. That was news to me. Yes, I would be interested. Because if counsel steered the choice of parties to be the plaintiff, that sort of thing, I mean, that's her suggestion, that a law firm could participate in fraudulent activity with legal choices being made. Who should be the plaintiff here? Who should recover? She sort of sets up a matter that's of interest to me. I haven't thought about that, but that's something we didn't see. There's a 4. million recovery for Prosper that wasn't for Big Research? Yes, that was an issue that involved who the proper party was in the MarketStar arbitration to pursue a claim against MarketStar. Right, right. It sounded interesting. The contract that had been entered into long before my involvement was between Prosper and MarketStar. Okay, but Big Research intervenes the formation of Big Research and thereby the interest of Penn as a member. Penn wanted it to be Big Research insofar as who the MarketStar contract was with because Penn was at the time a 47% member in Big Research. It was their preference that it have been a Big Research contract, but in fact it was a Prosper contract. The existing Prosper contract. Yes, long before my involvement. I didn't have anything to do with it and wasn't knee-deep in anything. It's off-topic, but I thought we could clear that up just a bit. All right, the contract, that's the reason for that. It was litigated in the arbitration, and the arbitrator decided it was a Prosper contract. They tried to re-litigate it in front of Judge Frost, and Judge Frost said it's a Prosper contract. Thank you. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?